IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SCOTT EVERETT,                    §
      Plaintiff,                §
                                §
v.                                §        No. 3:24-CV-02226-K
                                §
JAKUB KOSTECKI,                   §
      Defendant.                §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Plaintiff Scott Everett's motion for default judgment against Defendant Jakub Kostecki.  (Dkt. No. 11 ("Mot.").)  United States District Judge Ed Kinkeade referred the motion to the undersigned magistrate judge for proposed findings and recommendation for disposition.  (Dkt. No. 12.)  For reasons discussed below, the undersigned recommends that Everett's motion for default judgment against Kostecki be **GRANTED** as explained.

## I.  BACKGROUND

Plaintiff Scott Everett founded S2C Partners LLC DBA S2C Capital LLC ("S2 Capital") in 2012 and is its sole owner.  (Dkt. No. 1 ("Compl.") at ¶ 17; Dkt. No. 15 at 2.)  S2 Capital invests in multi-family properties, makes renovations and improvements, and provides property and construction management services.  (*Id.*)  Everett and S2 Capital have received recognition in local and national media for their success or acumen in the industry.  (*Id.* ¶¶ 20-21.)  According to Everett, S2

Capital has acquired more than $5.8 billion in multifamily communities and generated strong returns for its investors. (*Id.* ¶ 22.)

Everett's complaint alleges that Kostecki has engaged in an online campaign to malign Everett and S2 Capital as part of an extortion plot. In July 2024, Everett alleges, Kostecki, under the moniker "LPWhisperer" on X (formerly Twitter),[1] began posting false accusations about Everett—accusing him of engaging in "[i]lliquid real estate investing on piece of shit assets," committing theft, cheating investors, and blackmailing partners. (Compl. ¶¶ 46-48.) In emails to Kostecki, Everett invited a discussion about the posts and S2 Capital's business, insisting that Kostecki's posts were untrue and that S2 Capital earned substantial returns for its investors. (*Id.* ¶ 53.) Kostecki, however, continued posting negative assertions about Everett, calling him Bernie Madoff. (*Id.*) Some of Kostecki's posts garnered almost half a million views, and Kostecki bragged about his massive audiences. (Compl. ¶ 67.)

Everett alleges that Kostecki persistently made the public accusations against Everett and S2 in order to harm his business reputation and demand payment in exchange for ceasing the harassment. In August 2024, Kostecki sent an email to Everett suggesting that Everett was in "crisis/survival mode" and urging Everett to

---

[1] While the X handle does not include Kostecki's name, Everett alleges that Kostecki operated the account. (Compl. ¶ 44.) Everett supports his allegations with evidence that the LPWhisperer posts resemble posts from other accounts linked to Kostecki, and by showing that the LPWhisperer account details trace back to Kostecki's son's name ("M.") and his daughter's address. By failing to respond, Kostecki is deemed to have admitted the allegations showing that he controls the LPWhisperer account.

consider that "[t]wo years from now" the negative online discussion would have dissuaded potential investors, caused business partners to separate, and harmed his business relationships. (Compl. ¶ 55.) Even if Everett could refute the negative statements online or sue, Kostecki suggested that Everett could not undue the damage and would be "left on [his] own yelling at the clouds." (*Id.*)

Soon after, Everett retained legal counsel who sent Kostecki a cease-and-desist letter stating that the information being posted was untrue and demanding that he delete LPWhisperer's posts. (*Id.* ¶ 69.) Kostecki, however, sent Everett a communication raising a "hypothetical." (*Id.* ¶ 72.) Positing that Everett wanted to have control over LPWhisperer's content, Kostecki invited Everett to "make an offer" to buy the "media account," then he could do with its content whatever he wanted. (*Id.*) In the days that followed, Kostecki continued asserting publicly that Everett stole money and posted pictures of Everett and his wife suggesting they lived in luxury by fleecing others. (*Id.* ¶¶ 73-74.)

Everett cites two posts on X as the bases of his claims for defamation. In his first claim, Everett points to an August 23, 2024 post reposting an earlier entry with photos of Everett's wife in apparently luxurious circumstances and adding, "The guy who screwed over so many investors, tenants, employees and vendors (see my many posts outlining how he's done so in detail) is spending THEIR money, not his, on luxury. Scott Everett of S2, everyone." (Compl. ¶ 80.) Everett's second claim of defamation is based on a post the following day in which Kostecki reposted a statement by another person asserting that Everett scammed others and refused to

open his books to defrauded investors and to which LPWhisperer added, "This is the essence of my conflict with [an unrelated person] and Scott Everett. They've taken more money from people and they haven't done what they said they would do with it, instead they've funded lavish lifestyles and stupid initiatives." (*Id.* ¶ 101.)

Everett filed this lawsuit on August 29, 2024. (*See* Compl.) Everett filed proof of service on Kostecki on September 23, 2024. (Dkt. No. 7.) Kostecki has not appeared in this action. Everett requested that the Clerk enter default, and the Clerk did so on September 24, 2024. (Dkt. Nos. 8, 9.)

On October 23, 2024, Everett filed the instant motion for default judgment. (Dkt. No. 11.) United States District Judge Ed Kinkeade referred the motion to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b). (Dkt. No. 12.) The undersigned held a hearing on the motion on April 3, 2025, at which Everett had an opportunity to present evidence in support of his claim for damages. (Dkt. No. 14.) On April 24, 2025, Everett submitted a supplemental brief in support of his motion for default judgment. (Dkt. No. 15.)

## II.  LEGAL STANDARDS

Fed. R. Civ. P. 55 (b)(2) governs the entry of a default judgment. A default judgment is available to a plaintiff who demonstrates the following: (1) the defendant was served with a summons and the complaint, and a default was entered because the defendant failed to appear; (2) the defendant is not a minor or an incompetent person; (3) the defendant is not in the military or subject to the Soldiers and Sailors Relief Act of 1940, 50 U.S.C. § 3931; and (4) if the defendant appeared in the case,

4

the defendant was provided with notice of the default judgment application at least three days before the hearing. *See Arch Ins. Co. v. WM Masters & Assocs., Inc.*, 3:12-CV-2092-M, 2013 WL 145502, at *2 (N.D. Tex. Jan. 14, 2013) (citing *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1070 (D. Ariz. 2006)). In addition, the plaintiff "must make a prima facie showing of jurisdiction." *TFHSP, LLC Series 10147 v. U.S. Bank Nat'l Ass'n*, 3:14-CV-2589-M-BN, 2016 WL 2856006, at *2 (N.D. Tex. Apr. 18, 2016) (citing *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 325 (5th Cir. 2001)).

The Fifth Circuit has set out a three-step process for a plaintiff seeking default judgment: (1) default by the defendant; (2) entry of default by the Clerk; and (3) entry of a default judgment by the district court. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996); *see also J & J Sports Prods., Inc. v. Morelia Mex. Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015). A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 55(a); *PharMerica Corp. v. Paragon Healthcare Group, LLC*, No. 2:19-CV-196, 2021 WL 9274561, at *2 (N.D. Tex. Aug. 20, 2021).

"'Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations.'" *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (quoting *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989)); *see also Arch Ins. Co.*, 2013 WL 145502, at *2 (citing

*Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999) (observing the Fifth Circuit's general disfavor of default judgments and preference to resolve cases on their merits).  But this policy is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion."  *Rogers*, 167 F.3d at 936 (quoting *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990) (internal quotations omitted)); *see also Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990) (noting that default judgments allow courts to manage their dockets "efficiently and effectively").

"A party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default."  *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996).  "There must be a sufficient basis in the pleadings for the judgment entered."  *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).  Only well-pleaded facts, not conclusions of law, are presumed to be true.  *Id*.  Default judgment "should not be granted on the claim, without more, that the defendant had failed to meet a procedural time requirement."  *Mason & Hanger–Silas Mason Co., Inc. v. Metal Trades Council*, 726 F.2d 166, 168 (5th Cir. 1984).

A defaulting defendant is deemed to admit all well-pleaded facts in the plaintiff's complaint, but not facts that are not well pled or conclusions of law. *Nishimatsu Constr. Co.*, 515 F.2d at 1206.  Typically, damages are not awarded without a hearing or a demonstration by detailed affidavits establishing the necessary

facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, if the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

Courts have developed a three-part analysis to determine whether to enter a default judgment against a defendant. *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008). First, in assessing whether the entry of a default judgment is procedurally warranted, courts consider several factors, including: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Second, courts assess the substantive merit of the plaintiff's pleadings to determine whether there is a sufficient factual basis for default judgment. *See Nishimatsu Constr. Co.*, 515 F.2d at 1206 (finding that a plaintiff must plead sufficient facts to show it is entitled to relief). Third, courts determine what form of relief, if any, the plaintiff should receive. *See 1998 Freightliner*, 548 F. Supp. 2d at 384.

7

## III.  ANALYSIS

**A.    Defendant Kostecki has been validly served.**

As an initial matter, the undersigned must determine whether Everett has shown proper service on Kostecki.  *See* Fed. R. Civ. P. 4(c).  Federal Rule of Civil Procedure 4(e) describes the process for serving an individual.  Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by "delivering a copy of the summons and of the complaint to the individual personally[]" or by "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there[.]"  Fed. R. Civ. P. 4(e)(2)(A)-(B).  "The general rule is that '[a] signed return of service constitutes prima facie evidence of valid service, which can be overcome only by strong and convincing evidence.'"  *People's United Equip. Fin. Corp. v. Hartmann*, 447 F. App'x. 522, 524 (5th Cir. 2011) (quoting *O'Brien v. R.J. O'Brien & Associates, Inc.*, 998 F.2d 1394, 1398 (7th Cir.1993)).

Here, Everett filed a return of service, in which the process server, John Chely, declared under penalty of perjury that he served the summons on Kostecki's wife at 7:30 a.m. on August 30, 2024, at their residence.  (*See* Dkt. No. 7.)  Chely noted that Ms. Kostecki refused to get her husband and said she would not accept the documents, so Chely placed them on a trash bin beside her.  (*See id.*)  Everett's complaint alleges Kostecki lives as the address where Chely contacted Ms. Kostecki, and it includes a photo of Kostecki answering the door at that address earlier in

8

August 2024 when an investigator delivered the demand letter from counsel. (Compl. ¶ 75.) Everett establishes that Kostecki has been served by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there[.]" Fed. R. Civ. P. 4(e)(2)(B).

**B.    Default judgment is procedurally proper against Kostecki.**

Because default judgments are highly disfavored, the Court must ensure Everett has properly followed all procedures to be entitled to default judgment. The Court's analysis is framed by the *Lindsey* factors. *Lindsey*, 161 F.3d at 893. As explained below, the *Lindsey* analysis supports default judgment in favor of Everett.

First, there are no "material issues of fact in dispute," as Kostecki failed to answer the Complaint. Second, Kostecki's refusal to engage in the litigation process threatens to prejudice Everett's rights. Nothing indicates Kostecki would be unfairly prejudiced by default considering he has chosen not to respond and contest the allegations against him. Third, the grounds for default are clearly established given that Everett served Kostecki with the Complaint and summons, and Kostecki failed to answer despite the warning that failure to do so could result in default judgment. Fourth, there is no evidence before the Court to suggest that Kostecki's silence is the result of a "good faith mistake or excusable neglect." Fifth, considering every other factor from *Lindsey* favors default judgment, the Court is not aware of any facts that would obligate the Court to set aside the default if challenged by Kostecki. *See Lindsey*, 161 F.3d at 893.

9

C.    **Default judgment is substantively proper against Kostecki for both statements.**

To maintain a defamation cause of action under Texas law, a plaintiff must show (1) publication of a false statement of fact to a third party; (2) which was defamatory and concerned the plaintiff; (3) made with the requisite degree of fault; and, unless the statements are defamatory per se, (4) the plaintiff suffered damages." *See Apex Int'l, LLC v. Trennepohl*, No. 3:19-CV-2242-K-BK, 2021 WL 5658959, at *3 (N.D. Tex. Nov. 3, 2021) (citing *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 743 (5th Cir. 2019)), *adopted*, 2021 WL 5631676 (N.D. Tex. Nov. 30, 2021); *see also In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015). "A statement is defamatory per se when it is 'so obviously harmful that general damages may be presumed.'" *Id.* Defamatory per se statements include statements that (1) accuse someone of a crime; (2) impute a loathsome disease; (3) injure someone's office, business, or profession; or (4) impute sexual misconduct. *Id.* (citing *Downing v. Burns*, 348 S.W.3d 415, 424 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

"A false statement can be defamatory under Texas law if it injures a person's reputation." *Warren v. Fed. Nat'l Mortgage Ass'n*, 932 F.3d 378, 383 (5th Cir. 2019) (citing *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017)). "Whether an alleged statement is defamatory depends on how a person of ordinary intelligence would perceive the statement in light of the surrounding circumstances." *Id.* (citing *Carr v. Brasher*, 776 S.W.2d 567, 569-70 (Tex. 1989)). "Under Texas law, false statements are published if they are communicated, either in writing or orally, to some third

10

person who is capable of understanding their defamatory import and in such a way that the third person did so understand." *Id.* at 384 (internal quotations omitted).

The status of the person allegedly defamed determines the requisite degree of fault. *In re Lipsky*, 460 S.W.3d at 593. A private individual only needs to prove negligence, while a public figure must prove actual malice. *Id.* "'Actual malice' in this context means that the statement was made with knowledge of its falsity or with reckless disregard for its truth." *Id.* (citing *Huckabee v. Time Warner Entm't Co.*, 19 S.W.3d 413, 420 (Tex.2000)).

Because default was entered against Kostecki, the Court accepts all factual allegations in the complaint relating to his liability for defamation as true. *Apex Int'l, LLC*, 2021 WL 5658959, at *3.

### 1.    Default judgment is appropriate for defamation based on Kostecki's August 23 post.

Everett's well-pleaded allegations support his defamation claim regarding the August 23, 2024, tweet. Kostecki posted the following statement on his X account: "The guy who screwed over so many investors, tenants, employees and vendors (see my many posts outlining how he's done so in detail) is spending THEIR money, not his, on luxury. Scott Everett of S2, everyone." (Compl. ¶ 80.)

The August 23 statement is defamatory per se, and Kostecki published it to others via his X account. (Compl. ¶ 80.) The post identifies Everett by name, (*id.*), and a person of ordinary intelligence would perceive Kostecki's statement to say that Everett misappropriated business investors' funds and used them for personal use in

11

sustaining a luxurious lifestyle.  Everett has alleged that the statement is objectively false and hurtful to his reputation.  (*Id.* ¶ 87.)  Everett posits that this statement damages his reputation because it questions his fitness to "conduct his business as a general partner in the real estate industry, investor, and businessman[.]"  (*Id.* ¶ 89.) Finally, Everett's allegations sufficiently state that Kostecki acted with actual malice when making this statement.  Specifically, Everett avers that Kostecki actively refused to entertain Everett's explanations and invitations for discussion and instead continued posting false allegations.  (*See id.* ¶¶ 44, 46, 48).  According to the complaint, Kostecki acknowledged that even "[i]f the information isn't true and [Everett] can sue and write blog posts saying they're not true," "no court can stop this" and Everett could not undo the damage.  (*Id.* ¶ 55.)  These facts plausibly allege that Kostecki acted with disregard for the truth.  Finally, since Kostecki's defamatory statement is directed at Everett's business and profession, it is defamatory per se, and Everett need not prove actual damages to establish liability.  *See Apex Int'l, LLC*, 2021 WL 5658959, at *3 ("Plaintiffs also assert those statements injured their 'trade, business, or profession' . . . . Because Plaintiffs plausibly alleged the statement were *per se* defamatory, they did not need to demonstrate the fourth element of damages to sufficiently plead their defamation claim."); *see also Medina v. Fed. Janitorial Services, Inc.*, No. EP-12-CV-350-PRM, 2013 WL 8480147, at *4 (W.D. Tex. Sept. 24, 2013) ("Texas case law firmly establishes that falsely accusing someone of stealing or calling someone a 'thief' constitutes defamation per se."); *Batiz v. United Parcel Serv., Inc.*, No. 3:05-CV-2302-P, 2007 WL 9715011, at *6 (N.D. Tex. July 11, 2007)

12

("[B]ecause the statements tend to injure Plaintiffs' business and profession, [they] constitute slander per se[.]").

Accordingly, based on the allegations, default judgment should be granted on Everett's first claim for defamation.

### 2. Default judgment is appropriate for defamation based on Kostecki's August 24 post.

Everett's well-pleaded allegations support a defamation claim based on Kostecki's X post on August 24. Kostecki reposted a statement by "The Rogue Politico" in which the other person stated that "Scott would rather show off his woman in a bikini on a trip paid for by the people he's scammed than the books that show how much he's defrauded from vulnerable investors[.]" (Compl. ¶ 101.) In reposting the statement, Kostecki added "This is the essence of my conflict with [unrelated person] and Scott Everett. They've taken money from people and they haven't done what they said they would do with it, instead they've funded lavish lifestyles and stupid initiatives." (*Id.*)

Kostecki's August 24 Statement constitutes defamation per se. Similarly to the August 23 Statement, Kostecki publicly posted this on X where anyone can access it. This statement also indicates that Everett is misappropriating funds and defrauding investors. Everett again alleges that this statement is false. (Compl. ¶ 87.) Based on the same allegations supporting the first claim of defamation, Everett sufficiently avers that Kostecki acted with actual malice when posting this

13

statement.  This statement similarly relates to Everett's business, and it is defamatory per se.

Accordingly, based on the allegations in the complaint, default judgment should be granted with respect to Everett's second claim for defamation.

## D.    Everett should be awarded nominal damages.

In the complaint, Everett seeks compensatory and actual damages, special damages, and punitive damages, and he also requests certain costs.  (*See* Compl. at 46.)  In the motion for default judgment, he requests $567,515 for what he terms "reputation and remedial damages."  (Mot. at 9.)  This amount appears to be based in part on Everett's assessment of the value of his time spent dealing with Kostecki's conduct.  (*See* Mot. at 9; Dkt. No. 11-1 ¶ 47.[2])  The other component of the requested damages is a payment made to a communications firm to address investor questions and counteract the damage done by Kostecki.  (*See* Mot. at 9-10; Dkt. No. 11-1 ¶¶ 44-48.)

The undersigned noticed a hearing on Everett's motion for April 3, 2024.  (Dkt. No. 13.)  At the hearing, the undersigned provided Everett an opportunity to submit evidence proving the damages sought, but Everett did not do so and requested an opportunity to submit further briefing and evidence on damages.  On April 24, he submitted a supplemental brief in which he further limited his damages

---

[2] The undersigned cites Everett's supporting evidence by docket entry because he did not provide an appendix that complies with N.D. Tex. L.R. 7.1(i).

14

request to $82,500, an amount paid to a crisis public relations firm to mitigate the damage caused by Kostecki's statements.  (Dkt. No. 15.)  Everett provides an affidavit and attaches a copy of the check from S2 to the firm.  (Dkt. No. 15-1.)

"In Texas, there are three available types of damages for claims of defamation per se: '(1) nominal damages; (2) actual or compensatory damages; and (3) exemplary damages." *Apex Int'l, LLC*, 2021 WL 5658959, at *5 (citing *Hancock v. Variyam*, 400 S.W.3d 59, 64 (Tex. 2013))  "In defamation *per se* cases, nominal damages are awarded when there is no proof that serious harm has resulted from the defendant's attack upon the plaintiff's character and reputation or when they are the only damages claimed, and the action is brought for the purpose of vindicating the plaintiff's character by a verdict of a jury that establishes the falsity of the defamatory matter." *Hancock*, 400 S.W.3d at 65 (internal quotations omitted).  "Although some mental anguish or loss to reputation can be presumed to flow from defamatory per se statements, 'the law does not presume any particular amount of damages beyond nominal damages.'" *Apex Int'l, LLC*, 2021 WL 5658959, at *5 (quoting *Gjergjani v. Ware*, No. 4:14-CV-00448-ALM, 2016 WL 4545521, at *3 (E.D. Tex. Aug. 8, 2016), *adopted*, No. 4:14-CV-448, 2016 WL 4529637 (E.D. Tex. Aug. 30, 2016)).

"Nominal damages are a trivial sum of money—such as $1.00—awarded to a litigant who has established a defamation per se cause of action but has not established that he is entitled to compensatory damages." *Hawbecker v. Hall*, 276 F. Supp. 3d 681, 687 (W.D. Tex. 2017) (citing *Hancock*, 400 S.W.3d at 64); *see also Apex Int'l, LLC*, 2021 WL 5658959, at *5 (awarding $1,000 in nominal damages for each

defamatory statement).  An award for damages that is beyond a nominal sum must have evidentiary support.  *See In re Lipsky*, 460 S.W.3d at 593.

"Actual or compensatory damages are intended to compensate a plaintiff for the injury [he] incurred and include general damages (which are non-economic damages such as loss of reputation or mental anguish) and special damages (which are economic damages such as for lost income)."  *Hancock*, 400 S.W.3d at 65. Special damages also include expenses incurred "in remedying the effects of a publication[.]"  *See Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 161 (Tex. 2014).  The plaintiff must always prove special damages to recover them.  *Hancock*, 400 S.W.3d at 65.

Everett points to the revised $82,500 expense as special damages incurred to remedy Kostecki's defamatory statements, and he seeks to recoup that amount spent on a public relations firm.  Under Texas law, these damages qualify as a remediation expense that, if proved, is recoverable in a suit for defamation.  *See Waste Mgmt. of Tex., Inc.*, 434 S.W.3d at 161 (affirming a jury verdict awarding the plaintiff $450,592.03 in remediation expenses); *see also Gjergjani*, 2016 WL 4545521, at *4 (awarding plaintiff "$2,500 for the cost of Plaintiff's time spent monitoring, reporting, and requesting removal of Defendant's defamatory comments").  When courts have awarded or affirmed a compensatory damages award, it has been based on sufficient evidence submitted by the plaintiff.  *Compare Gjergjani*, 2016 WL 4545521, at *4 ("[T]he testimony and evidence at Hearing guides this Court's recommendation."); *and Waste Mgmt. of Tex., Inc.*, 434 S.W.3d at 161 ("[E]vidence of

damages consisted of 271 pages of invoices, expenses, time spent on curative work, supplies, mileage, etc. . . . TDS's witnesses . . . testified that TDS's staff devoted more than $700,000-worth of time and $450,592.03 in out-of-pocket expenses to remedy the Alert's effects."); *S. U.S. Trade Ass'n v. Unidentified Parties*, No. CIV.A.10-1669, 2013 WL 5506121, at *3-4 (E.D. La. Sept. 30, 2013) (awarding damages related to "Internet search engine optimization and Plaintiffs' efforts to protect their reputation"), *aff'd sub nom. S. U.S. Trade Ass'n v. Guddh*, 565 F. App'x. 280 (5th Cir. 2014); *with Apex Int'l, LLC*, 2021 WL 5658959, at *5 ("Accordingly, because Plaintiffs presented no evidence of actual damages suffered, an award of nominal damages only is appropriate.").

The evidence submitted in connection with Everett's motion is insufficient to support the requested damages amount. In contrast to the live testimony and detailed records supporting similar awards in other cases, Everett has provided only affidavit statement verifying that the public relations firm was retained to "mitigate and repair the reputational damage" caused by Kostecki's conduct and proof of payment for $82,500. (*See* Dkt. No. 15-1 at 1.) He does not explain what steps the firm took to accomplish its mission or provide detailed billing records justifying the work done or rates charged, for example. The evidence submitted provides little more than the reason for the firm's retention and the amount paid.

Everett's evidence is insufficient to warrant an award for compensatory damages in this case for an additional reason. As he acknowledges in his supplemental brief, (Dkt. No. 15 at 2), the cost of the public relations firm was paid

17

by S2, a limited liability company that is not a party to this lawsuit. This action was brought by Everett, an individual. Everett contends that he should be permitted to recoup loss to S2 because he is the sole owner of S2 and the amount paid to the public relations firm would have been distributed to him but for Kostecki's actions. (Dkt. No. 15 at 2.)

A limited liability company is a legal entity separate from its members or owners. *Ovation Fin. Holdings 5 LLC v. G.E.T. Mktg., LLC*, 690 S.W.3d 396, 401 (Tex. App.—Amarillo 2024, no pet.) (explaining that a limited liability company is a distinct legal entity that is separate from its members). While members own an interest in the LLC, they are not the LLC. *See id.* Everett advances no authority indicating that he may so casually disregard the distinction and personally recoup payments that were made by S2, and Texas cases suggest otherwise. *See Singh v. Duane Morris, L.L.P.*, 338 S.W.3d 176, 181 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) ("The Texas Supreme Court has held that an individual shareholder, even a sole shareholder . . . , has no standing to recover personally for damages incurred by the corporation." (citing *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990))); *Lamajak, Inc. v. Frazin*, 230 S.W.3d 786, 794 (Tex. App.—Dallas 2007, no pet.) ("It is well established that a corporate stockholder, even of a wholly owned corporation, cannot recover damages personally for a wrong done to the corporation even though he may be injured by that wrong."). Everett's request for compensatory damages fails on this ground as well.

Even though Everett has not produced sufficient evidence to support compensatory damages, he may still recover nominal damages based on the actionable statements that are defamatory per se. Surveying comparable authority, the undersigned concludes that nominal damages in the amount of $1,000 per statement—for a total award of $2,000—is justified. *See, e.g.*, *Apex Int'l, LLC*, 2021 WL 5658959, at *5 (awarding $1,000 in nominal damages for each defamatory statement).

## IV. RECOMMENDATION

For the reasons discusses, the undersigned **RECOMMENDS** that the District Judge **GRANT** Everett's motion for default judgment and award $2,000 in nominal damages.

**SO RECOMMENDED** on May 16, 2025.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

19

## NOTICE OF RIGHT TO OBJECT

A copy of these findings, conclusions, and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).